```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

**CIVIL ACTION NO. 1:09cv913 (WOB)**

L.F.P.IP, LLC, ET AL.                                    PLAINTIFFS

VS.
              **FINDINGS OF FACT, CONCLUSIONS
                  <u>OF LAW, AND OPINION</u>**

**HUSTLER CINCINNATI, INC.,**
**ET AL.**                                               DEFENDANTS


This matter is before the court following a bench trial held between January 19 and January 25, 2011, after which the parties filed extensive post-trial briefs. (Docs. 158, 161, 163) Having heard the evidence and reviewed the parties' filings, the court now issues the following Findings of Fact, Conclusions of Law, and Opinion.

*Introduction*

This is essentially a family dispute that has spilled over into the courts. The parties are two brothers, Larry and Jimmy Flynt (hereafter "Larry" and "Jimmy"), and the corporate parties are entities owned and/or controlled by them.

At stake in this dispute is a 50% partnership interest claimed by Jimmy in the entire Hustler enterprise, comprised of a myriad of corporations and owning several valuable properties, including the Hustler trademarks. Larry's position is that

there was never a partnership, legal or equitable, and that he is the true owner of the entire enterprise.[1]

After a trial to the court sitting without a jury and the filing of extensive briefs by both parties, the court concludes that Jimmy has adduced no credible evidence that there ever was a partnership. Further, any interest claimed by Jimmy was released as part of a global settlement between the brothers in 1988.

### *Procedural Background*

On December 17, 2009, Jimmy filed suit against Larry and other defendants in the Court of Common Pleas for Hamilton County, Ohio alleging numerous state law claims including, as relevant here, a claim for an Accounting and Dissolution of Express or Implied Partnership.

The next day, December 18, 2009, this action was filed by L.F.P.IP, LLC and L.F.P., Inc. (collectively "LFP, Inc.") against Hustler Cincinnati, Inc. ("HCI"). (Doc. 1) LFP, Inc. alleged, inter alia, claims for trademark violation arising out of HCI's use of the Hustler mark in connection with the retail store owned and operated by Jimmy at 411 Elm Street in downtown Cincinnati, Ohio. Shortly thereafter, LFP, Inc. moved for a

---

[1] Not in dispute, however, is the ownership of Hustler Cincinnati, Inc., which owns and operates the retail store at 411 Elm Street in downtown Cincinnati. All agree that Jimmy is the owner of that business, albeit not the Hustler trademark, the use of which gives rise to plaintiffs' federal claims herein.

2

preliminary injunction to prevent Jimmy from continuing to use the Hustler mark at that store. (Doc. 3)

The court held a hearing on the motion for preliminary injunction on January 20, 2010. Prior to the hearing, the parties provided the court with a copy of the complaint filed in Hamilton County. Following this conference, the court ordered HCI to pay into escrow disputed trademark royalty payments, and it stayed these proceedings in deference to the Hamilton County action, which was first-filed. (Doc. 8, 13)

On July 1, 2010, the court held a status conference. The court denied a motion by LFP, Inc. to release the funds held in escrow, but it granted its request that the case proceed to an evidentiary hearing on its motion for preliminary injunction. (Doc. 20) That hearing was set for October 12, 2010, and preparatory discovery ensued.

On July 22, 2010, HCI filed its Answer and Counterclaim, asserting that HCI was entitled to use the Hustler marks by virtue of an express oral partnership agreement between Jimmy and Larry. (Doc. 23)

A further status conference was held on October 5, 2010. At this conference, it was noted that the action pending in Hamilton County had been dismissed on the grounds of forum non conveniens, the state court finding California to be the

appropriate forum for the parties' dispute. This court also noted that LFP, Inc.'s trademark claims could not be resolved without consideration of Jimmy's affirmative "partnership" defense, and that the limited hearing contemplated would likely be inadequate to litigate all these issues. (Doc. 61) The court therefore gave the parties time to consider how they wished to proceed.

Thereafter, counsel informed the court that the parties wished to continue the hearing on the motion for preliminary injunction in favor of completing discovery and proceeding to a full trial on the merits of the partnership claim. (Doc. 62) The court therefore cancelled the hearing, ordered that Larry and Jimmy be added as named parties, and scheduled a non-jury trial on Jimmy's partnership claim for January 2011. (*Id.*)

Following a flurry of motions and expedited discovery, the non-jury trial was held as noted above.

### *FINDINGS OF FACT*[2]

**A.   *Early Days***

1.   The brothers were born in the 1940s, Larry being the elder. They agree that they grew up hard in dire poverty.

---

[2] There are volumes of evidentiary facts in the record, but the court will make findings only of those which are essential.

4

2. Jimmy enlisted or was drafted into the U.S. Army and was sent to Vietnam in 1967.

3. In 1969, the brothers opened a bar/nightclub at 608 Walnut Street in downtown Cincinnati. Jimmy fronted $5,000 to purchase the bar but was repaid in the first week. This bar was called "The Hustler Club."

4. In the early 1970s, the enterprise expanded into six or more clubs, trademarks were applied for, and a newsletter was published. The corporate structures were deliberately made confusing to prevent the authorities (who might be contemplating obscenity prosecutions) from identifying the true owners of the various businesses.

5. Although various licenses, trademarks, etc. were employed, the true owner of these businesses was always Larry. At times Larry would refer to Jimmy as a partner, but the court accepts his testimony that this was a matter of courtesy rather than reflective of the true state of affairs.

6.   In 1974, *Hustler* magazine was first published. Hustler Magazine, Inc. ("HMI") was incorporated in Ohio on March 14, 1974 to publish the magazine.

7.   In 1975, the enterprise purchased a nude picture of Jackie Kennedy Onassis from an Italian paparazzi and placed it on the cover of *Hustler* magazine.  This vastly increased the profitability of the magazine, both for that and future issues, and marked the beginning of true success for the enterprise.

8.   Following publication of the "Jackie O. Issue," Larry took immediate steps to consolidate all legal ownership in the various enterprises in himself.  All of the ownership interests in all the enterprises were consolidated into a parent corporation, LFP, Inc. (Ohio) in which Larry was the sole shareholder.

9.   Jimmy admits there were never any tax returns filed as a partnership; nor was there ever a written partnership agreement.

10. In 1977, Larry and Jimmy were indicted for obscenity in Cincinnati. Although Jimmy did not testify, his defense was that he had no interest in the Hustler enterprises. He was acquitted.

B. *Tragic Events*

11. In 1978, Larry was shot by a sniper. He was gravely injured and remains a paraplegic to this day. He was in severe pain for some years, taking heavy medication. He admits he exhibited bi-polar symptoms at times during this period.

12. Larry and Jimmy's relationship became contentious after this time.

13. In June 1978, Larry, Jimmy and Althea, Larry's then-wife, were involved in a dispute concerning ownership in the companies. Jimmy executed a general release (Plf. Exh. 65) accepting one of the companies (Leasure Time Products) in settlement of all claims and reciting that it released all claims he had, past, present and future. Jimmy denies that the plain language of the release was its true intent,

but the court does not find this testimony credible, and rejects it.

14. Also in 1978, Larry underwent a religious conversion, one act of which was to put Adam and Eve on a cover of *Hustler*.

15. Also in 1978, Larry moved to California and moved the company headquarters there also.

16. In 1980, Jimmy moved back to Kentucky, where he was unemployed. The court notes that if he believed he had a partnership interest at this time, he would have asserted it.

17. In 1981, Jimmy sent an emissary from Kentucky to California, asking Larry to re-employ him. This is inconsistent with a belief that he was a partner.

18. In 1982, Larry caused all the Ohio corporations to be acquired by LFP, Inc., a California corporation.

C.  *The Conservatorship and Ensuing Litigation*

19.  Around 1983, Larry began to exhibit extremely bizarre behavior, announcing his candidacy for President of the United States and threatening judges and President Reagan.

20.  In 1984, Larry was sentenced to 15 months in federal prison for contempt of court, including an outburst during an oral argument in the Supreme Court of the United States. During his imprisonment, he ran the Hustler enterprise remotely.  He attempted to give all the assets of the company to the American Atheist Group.  On one occasion during a conference call, he fired everybody at the Hustler headquarters in California.

21.  In response to this behavior, Jimmy went to court in March 1984 and was appointed conservator of the enterprises.  Although Larry now admits this was probably for the good of all, he highly resented it then and now.

22.  In the conservatorship petition, Jimmy recited that Larry was the sole shareholder, director and chairman of all the enterprises.  (Plf. Exh. 66)  The court finds that this recitation was accurate and Jimmy was truthful in

9

making it. As Larry pointed out in his testimony, if Jimmy was a partner, why did he need to be appointed conservator?

23. Larry was released from prison in July 1984, after serving five months. In November 1984, Jimmy and Larry executed a further release and buyout agreement. Jimmy was to receive $400,000 to release all claims in the enterprise and its trademarks. (Plf. Exhs. 75, 76) Larry cancelled this payment, however, because he claimed to have discovered that Jimmy had embezzled from the enterprise during the conservatorship.

24. Larry and Jimmy then entered into extensive litigation which went all way to the Ninth Circuit. Larry and LFP, Inc. sued Jimmy in Los Angeles Superior Court, alleging that Jimmy had misappropriated company funds. (Plf. Exh. 69) Jimmy removed the case to the United States District Court for the Central District of California, counterclaiming for enforcement of the parties' agreement.

25. The California federal district court found in Jimmy's favor, concluding that Larry was barred from relitigating the alleged misappropriation of funds by findings made in

the conservatorship proceedings. (Plf. Exh. 72) In its findings, the federal district court found that, at all relevant times, "Larry Flynt has been the sole shareholder of L.F.P., Inc." (*Id.* at 2)

26. Larry and LFP, Inc. appealed to the United States Court of Appeals for the Ninth Circuit. On December 2, 1987, the Ninth Circuit affirmed in part and reversed in part, remanding the case to the district court. (Plf. Exh. 74)

27. This litigation continued in the district court and culminated in another settlement and general release on the eve of trial of the issues remanded by the Ninth Circuit. Again all claims known and unknown up to this time were released.[3] (Plf. Exh. 82) Jimmy's brief asserts that this release and settlement did not liquidate any partnership

---

[3] This Settlement Agreement, executed on November 15, 1988, contains a release whereby "Jimmy hereby forever releases, discharges and acquits Plaintiffs and Hustler, from any and all claims, debts, action, causes of action, liabilities, costs and obligations of every kind, known and unknown, matured and unmatured, of any kind or nature whatsoever, now existing or arising in the future out of any fact, thing, event, occurrence, act, omission, or non-occurrence to the date hereof, including, but not limited to, any and all claims, demands, debts, actions, causes of action, liabilities, costs and obligations asserted in, arising out of, or in any way relating to the California proceeding, the Kentucky Action, or the Conservatorship Proceeding. Jimmy further hereby releases any and all liens, security interests, and encumbrances, if any, of any kind which he may have in any property of LFP, Hustler, or Larry." (Plf. Exh. 82 at 3-4)

11

claim he may have had, because no such claim was ever raised in the litigation. The problem is, if he believed he had such a claim, the court finds he would have raised it. Further, if he could have raised it, the claim is barred by the doctrine of claim preclusion (res judicata). *See* Conclusions of Law, *infra*.

D. *Jimmy's Prior Testimony*

28. In 2003, Jimmy gave deposition testimony in dissolution of marriage proceedings between him and his wife. [Plf. Exh. 2] Jimmy testified that he worked as a "consultant" for his brother and that he merely traveled around the country looking for locations and managing stores:

> That's all I know. I don't have – I never see any business records. I don't see any checkbooks. I don't do anything except travel and work for my brother. I don't know what goes on business-wise other than the idea of retail.

(Plf. Exh. 2 at 10)

Jimmy further testified in this deposition that his brother "fired" him in 1984, that he sued Larry for wrongful termination, that he went "back to work" in 1990 for LFP. (*Id.* at 20-21) When asked who the shareholders in LFP, Inc. were, he testified: "It would be my brother

12

I'm sure, not me, the best of my knowledge." (*Id.* at 47-48) Jimmy further testified:

> Well, you have to understand Hustler is Larry Flynt, you know. Everything that bears that name he has complete control of mind, sole [*sic*], and body. So when I think of a club, when I think of a store, when I think of a magazine, I think it's him 100 percent.

(*Id.* at 51)

29. The court finds Jimmy was telling the truth at that time and that, although he may now be deceiving himself, Jimmy has had no viable claim of ownership since at least 1976, if, indeed he ever had one.

30. The court expressly accepts Larry's testimony that there was never any partnership agreement: "Jimmy worked for me. He was my brother. That was the extent of our relationship." The court so finds as the crucial fact in this case. Larry's testimony on this ultimate issue of fact was positive and unambiguous. Jimmy's testimony, on the other hand, was vague, evasive and inconsistent, and impeached by his own sworn testimony in other court proceedings.[4] Therefore, the court rejects it.

---

[4] In addition to the deposition testimony given by Jimmy in his domestic relations matter in 2003, he also gave a deposition in an unrelated insurance case in 1987 in which he testified that he had never held any ownership in

### *CONCLUSIONS OF LAW*

Extensive conclusions of law are not necessary in this case.

1. To prove an oral partnership, some agreement, either express or implied, must be proven by a preponderance of the evidence.[5] *See Madden Inv. Co. v. Stephenson's Apparel*, 832 N.E.2d 780, 782 (Ohio App. 2005); *Weiner v. Fleischman*, 816 P.2d 892, 897 (Cal. 1991). "It is not necessary that an agreement of partnership be in any particular form. The cornerstone of a partnership is that the parties, *by mutual consent*, have the ability to structure their relationship anyway they desire." *Mahler v. BAGS, Inc.*, 829 N.E.2d 1274, 1280 (Ohio App. 2005) (emphasis added). The burden of proof was on Jimmy and he failed to meet it, as stated in the findings of fact.

2. Moreover, Jimmy did not raise any partnership claim in litigation with Larry where it could have been raised, and any claim that may have ever existed is thus barred by claim preclusion. *See generally Migra v. Warren City Sch. Dist. Bd.*

---

LFP, Inc. and that he and Larry had not been partners in the night club business. (Plf. Exh. 1 at 8-10)

[5] While the court concludes that California and Ohio law both are arguably applicable to various aspects of these parties' business relationship, it need not resolve this conflict of laws analysis because the parties agree that the partnership laws of these states are sufficiently similar that any differences are not outcome determinative.

*of Educ.*, 465 U.S. 75, 85-87 (1984); *Trafalgar Corp. v. Miami County Bd. of Comm'rs*, 519 F. 3d 285, 288 (6th Cir. 2008).

    3.    In addition, the United States District Court for the Central District of California specifically found in 1986 that, "At all relevant times, Larry Flynt has been the sole shareholder of L.F.P., Inc." (Plf. Exh. 72 at 2) That finding was necessary to that court's conclusion that Larry was precluded from relitigating issues concerning Jimmy's alleged theft during the conservatorship. Jimmy's claim here is thus also barred by the doctrine of collateral estoppel, or issue preclusion. *Id.* at 287. *See also Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007).

    4.    Further, Jimmy's claim to partnership is also barred by the unambiguous, broad general release he executed in 1988. (Plf. Exh. 82)

    5.    The evidence adduced as to events occurring after 1988 is insufficient to carry Jimmy's burden of showing that any partnership was created after the execution of the 1988 release.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1) The partnership counterclaim of defendant Jimmy Flynt be, and is hereby, **DISMISSED WITH PREJUDICE**; and

(2) The parties shall confer, attempt to settle any remaining claims, and file status reports within **thirty (30) days** enumerating such claims and outlining the parties' views as to future proceedings.

This 12th day of May, 2011.



Signed By:
William O. Bertelsman
United States District Judge