## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **LFP IP, LLC, et al.,** | : | Case No. 1:09cv913 |
| | : | |
| | : | Judge Bertelsman |
| Plaintiffs, | : | |
| | : | Magistrate Judge Bowman |
| vs. | : | |
| | : | **PLAINTIFFS' MOTION FOR** |
| **HUSTLER CINCINNATI, INC., et al.,** | : | **SUMMARY JUDGMENT AND** |
| | : | **PERMANENT INJUNCTION** |
| | : | **WITH ATTACHED AFFIDAVIT OF** |
| Defendants. | : | **MICHAEL J. CUMMINGS** |

Plaintiffs LFP IP, LLC ("LFP IP"), L.F.P., Inc. ("LFP"), and Larry C. Flynt ("Larry") (collectively, "Plaintiffs") hereby move for summary judgment on the trademark claims asserted in their Amended Complaint and request the entry of a permanent injunction. Plaintiffs further move for summary judgment as to all of Defendants Hustler Cincinnati, Inc.'s ("HCI") and Jimmy R. Flynt's ("Jimmy") (collectively, "Defendants") remaining counterclaims.

The indisputable facts demonstrate that LFP IP is the owner of the federally-registered HUSTLER marks at issue and that Defendants are improperly using such marks after the termination of their license with Plaintiffs.  Because Defendants previously licensed the HUSTLER marks from Plaintiffs, Defendants cannot now contest the ownership or validity of the marks, and the likelihood of confusion is plainly established. As a result, there are no genuine issues of material fact, and Plaintiffs are entitled to a permanent injunction barring Defendants' further misuse of the marks and dismissal of Defendants' remaining counterclaims as a matter of law.

This Motion is supported by the following Memorandum In Support and the Affidavit of Michael J. Cummings, which is attached hereto as Exhibit A. A proposed Permanent Injunction is attached hereto as Exhibit B.

Respectfully submitted,

/s/ Mark A. Vander Laan
Mark A. Vander Laan (0013297)
Email: mark.vanderlaan@dinslaw.com
Amanda P. Lenhart (0072517)
Email: amanda.lenhart@dinslaw.com
Joshua A. Lorentz (0074136)
Email: joshua.lorentz@dinslaw.com
Robert M. Zimmerman (0079584)
Email: robert.zimmerman@dinslaw.com
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone:         (513) 977-8200
Fax:           (513) 977-8141

**Attorneys for Plaintiffs**
**L.F.P., Inc., LFP IP, LLC,**
**and Larry C. Flynt**

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY..................................................................1

II.  FACTUAL BACKGROUND......................................................................2

    A.   THE PARTIES...........................................................................2

    B.   THE MARKS AT ISSUE.................................................................3

    C.   HCI ENTERS INTO A LICENSE AGREEMENT WITH LFP..............4

    D.   HCI BREACHES THE LICENSE AGREEMENT, AND
          LFP TERMINATES HCI'S LICENSE FOR THE
          HUSTLER MARKS...................................................................7

III. LAW AND ARGUMENT.......................................................................8

    A.   PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER
          OF LAW BECAUSE HCI IS A FORMER LICENSEE WHO
          IS CONTINUING TO USE THE HUSTLER MARKS OWNED
          BY LFP IP............................................................................9

          1.   Plaintiffs Have Ownership Of A Valid Trademark..............10

                  a.   The Federally-Registered HUSTLER Marks
                      Are Owned By LFP IP.................................................10

                  b.   An Oral Or Implied License Agreement
                      Existed Between LFP And HCI....................................11

                  c.   The Existence Of A License Precludes Defendants
                      From Challenging Ownership Or Validity.................15

           2.   Defendants Are Using Plaintiffs' HUSTLER Marks..............17

          3.   A Likelihood Of Confusion Is Demonstrated By HCI's
               Continued Use After Plaintiffs' Termination Of The
               License Agreement Between HCI and LFP............................17

    B.   PLAINTIFFS WILL BE IRREPARABLY HARMED IF
          DEFENDANTS' USE OF THE HUSTLER MARKS
          IS NOT PERMANENTLY ENJOINED.............................................18

    C.   THE THREAT OF HARM TO PLAINTIFFS GREATLY
          OUTWEIGHS THAT TO HCI................................................................19

**D.**     **THE PUBLIC INTEREST IS BEST SERVED BY ISSUING A PERMANENT INJUNCTION AGAINST HCI'S USE OF THE HUSTLER MARKS**.............................................................**19**

**E.**     **DEFENDANTS' REMAINING COUNTERCLAIMS SHOULD BE DISMISSED BECAUSE OF PLAINTIFFS' UNDENIABLE RIGHTS TO THE MARKS**................................................**20**

**F.**     **PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES DUE TO HCI'S WILLFUL AND DECEPTIVE INFRINGEMENT OF THE HUSTLER MARKS**...............................**22**

**IV.**     **CONCLUSION**...........................................................................**23**

## MEMORANDUM IN SUPPORT

## I.     INTRODUCTION AND SUMMARY

In the wake of this Court's Findings of Fact, Conclusions of Law, and Opinion ("Partnership Opinion") dismissing Defendants' partnership claims with prejudice, the remaining trademark issues before this Court are very straightforward.  The uncontradicted evidence establishes that:  (1) LFP IP owns the federally-registered HUSTLER marks; (2) Defendants licensed the marks from LFP with LFP IP's express approval; and (3) LFP terminated the license agreement with Defendants, but Defendants have continued to use the marks.  In light of these facts, trademark law provides that: (1) Defendants cannot challenge Plaintiffs' ownership or validity of the marks; (2) any common law rights Defendants may have had were extinguished and merged into the subsequent license with LFP; and (3) upon termination of the license, likelihood of confusion and irreparable harm are established by Defendants' continued use.

In short, because HCI licensed the HUSTLER marks from Plaintiffs, Defendants have absolutely no rights to those marks.  Moreover, because that license has been revoked, Defendants' continued use constitutes trademark infringement as a matter of law.  Thus, Plaintiffs are entitled to summary judgment and a permanent injunction.

Any remaining claims in Defendants' Counterclaim should likewise be dismissed. Counts One through Four of Defendants' Counterclaim (dissolution and accounting of partnership, breach of fiduciary duty, fraud and unjust enrichment and wrongful termination) were disposed of as a result of the Partnership Opinion.  While portions of counts Five through Seven (declaratory judgment, unfair competition, abuse of process, malicious bad faith pursuit of litigation, tortious interference and injunction) may have remained following the trial of Jimmy's partnership claim, under the trademark analysis

herein, they are without merit and Plaintiffs are entitled to summary judgment dismissing Defendants' Counterclaim as a matter of law.

## II.    FACTUAL BACKGROUND

### A.    THE PARTIES

LFP owns and controls several affiliates, including LFP IP and LFP Publishing Group, LLC ("LFPPG").  (*See* Affidavit of Michael J. Cummings ("Cummings Aff."), attached hereto, ¶ 2; Plaintiffs' Partnership Trial Exhibit ("PX") 151).  LFPPG is the sole member and owner of LFP IP.  (Cummings Aff. at ¶ 3).  LFP IP is the owner of eighty trademark registrations, including the world-famous HUSTLER marks at issue herein. (Cummings Aff. at ¶ 4).  Thirty-two of LFP IP's registrations contain "HUSTLER" as the sole or dominant feature of the trademark. (Cummings Aff. at ¶ 5; Exhibit 1 to Cummings Aff.).  LFP is owned by the Larry Flynt Revocable Trust (the "Trust").  (Cummings Aff. at ¶ 6; PX 151).  Larry controls the Trust and owns LFP, LFP IP and all of their affiliates. (Cummings Aff. at ¶ 7; Partnership Opinion at ¶ 5).

Jimmy is the sole shareholder of Defendant HCI.  HCI operates an adult boutique, located on a pedestrian walk-way, which sells HUSTLER merchandise, including but not limited to clothing items from LFP Apparel, LLC and adult videos from LFP Video Group, LLC, both of which are ultimately owned by the Trust.  (Cummings Aff. at ¶ 8).  HCI's location, design, and business model are based upon LFP's highly successful HUSTLER HOLLYWOOD  stores.  (*See* Deposition of Jimmy R. Flynt ("Jimmy Depo.") p. 31-32). Until 2009, HCI sold HUSTLER merchandise pursuant to a license agreement with Plaintiffs which has since been terminated.  (*See* September 2010 Deposition of Larry C. Flynt ("Larry Depo."), p. 171, 173, 186; Cummings Aff. at ¶ 9).

While Jimmy has been employed by a number of Larry's companies over the years, Jimmy was a W-2 employee of LFP since at least 1996. (*See* PX 83). Jimmy was a W-2 employee of HHEI commencing in 2005 and later FMG, both of which are owned and controlled by the Trust. (Partnership Trial Transcript ("Tr.") Day 4, p. 33-34; PX 83). Jimmy was also a director of LFP as recently as 2007. (*See* PX 152).

**B. THE MARKS AT ISSUE**

The HUSTLER marks have become an internationally recognized symbol of excellence in the adult entertainment industry and are used by LFP and its affiliates in connection with various goods and services, including but not limited to the HUSTLER clothing line; HUSTLER magazine; HUSTLER skin care; HUSTLER jewelry; HUSTLER foot wear; HUSTLER movies; the HUSTLER TV Channel seen worldwide on cable and satellite companies; adult toys and novelties; and the HUSTLER HOLLYWOOD boutique stores. (Exhibit 1 to Cummings Aff.). An example of the mark is below:

# HUSTLER®

The certified records of the United States Patent & Trademark Office ("USPTO") conclusively establish that the trademark registrations for HUSTLER, HUSTLER HOLLYWOOD, HUSTLER CLUB, HUSTLER HD and DESIGN, HUSTLER HUMOR, HUSTLER VIDEO, HUSTLER TV, and numerous others are owned by LFP IP. (Exhibit 1 to Cummings Aff.). From 1995 to 2003, LFP was the registrant of the HUSTLER marks. (Cummings Aff. at ¶ 10). LFPPG was assigned the entire interest to the marks in July of

2003.  (Cummings Aff. at ¶ 11).  Since October 2006, LFP IP has been the registrant of the HUSTLER marks.  (Cummings Aff. at ¶ 12; Exhibits 1-2 to Cummings Aff.).[1]

LFP and its affiliates spend approximately $5 to $10 million per year to promote the HUSTLER brand of products, and they spend approximately an additional $1 million per year to promote HUSTLER HOLLYWOOD retail stores.  (Cummings Aff. at ¶ 13).  The first HUSTLER HOLLYWOOD retail store opened in West Hollywood, California in 1998. The HUSTLER HOLLYWOOD retail stores, which currently total eleven, sell HUSTLER brand apparel, HUSTLER movies, adult novelties and toys, jewelry and skin care, and other non-Hustler merchandise.  (Cummings Aff. at ¶ 14).  All of the HUSTLER HOLLYWOOD stores are directly owned and controlled by HH-Entertainment, Inc., which is owned by the Trust and controlled by Larry.  (Cummings Aff. at ¶ 15; PX 151).  The HUSTLER HOLLYWOOD mark is registered by LFP IP with the USPTO in connection with retail store services. (Cummings Aff. at ¶ 16; Exhibit 1 to Cummings Aff.).

**C.    HCI ENTERS INTO A LICENSE AGREEMENT WITH LFP**

In the spring of 2000, eager to expand his growing chain of retail stores, Larry decided to open HCI in downtown Cincinnati.  (Larry Depo. pg. 159).  In order to avoid personal exposure to criminal prosecution and obtain his California gaming license, Larry installed Jimmy as the sole owner of HCI to act as an agent of LFP and its affiliates. (Partnership Trial Transcript ("Tr.") Day 4, p. 31-32).  As in the past, Jimmy was a W-2 employee of LFP at the time.  Jimmy's son Dustin Flynt ("Dustin") assisted with the management of the HCI store.  (*See* Deposition of Dustin M. Flynt ("Dustin Depo."), p. 18). Similar to Jimmy, Dustin was employed by LFP and performed quality control duties at

---

[1] On July 13, 2003, the HUSTLER marks were assigned by LFP to LFPPG.  On October 19, 2006, the HUSTLER marks were assigned by LFPPG to LFP IP.  LFP retained the right to use and sublicense the HUSTLER marks pursuant to an oral license agreement with LFP IP.  (Cummings Aff. at ¶ 18; Exhibit 2 to Cummings Aff.).

HCI.  (Dustin Depo. pp. 19, 20, 24).  HCI used the HUSTLER marks pursuant to express permission from Larry and LFP.  (Larry Depo. p. 168).  Jimmy was a paid employee of LFP, and later FMG, and therefore his job required him to provide quality control for the HUSTLER marks.  (Tr. Day 4, p. 33-34).

In addition, LFP, through Theresa Flynt ("Theresa"), Larry's daughter and an executive vice-president of Flynt Management Group, LLC ("FMG") exercised quality control over HCI's use of the HUSTLER marks.  (*See* Deposition of Theresa R. Flynt ("Theresa Depo."), pp. 24, 26-27, 36, 34; Deposition of Michael J. Cummings ("Cummings Depo."), pp. 149-150).  Theresa inspected the HCI store both on site and via remote video camera, consulted with HCI regarding décor, and regulated the flow of HUSTLER-branded goods to HCI.  (Theresa Depo. pp. 24, 36).  LFP also routinely examined HCI's financial statements and sales reports.  (Cummings Depo. p. 115).  Each night, HCI called its sales numbers in to Plaintiffs' agents in California.  (Jimmy Depo. p. 33).

In November of 2004, with HCI doing steady business, LFP and HCI determined that license payments were appropriate.  (*See* Deposition of Allie Jackson ("Jackson Depo.") pp. 53-56).  Accordingly, LFP and HCI prepared, but never signed, a written license agreement requiring HCI to pay LFP $8,400.00 per month to use the HUSTLER marks.  (*See* PX 85; Jackson Depo. pp. 53-56).

On February 24, 2005, HCI paid LFP $159,600 for license fees for the years 2003 and 2004.  (Jackson Depo. pg. 96; Exhibit 9 to Jackson Depo.).  HCI's and Jimmy's accountant of thirteen years, Allie Jackson, confirmed that this check was for license fee expenses and was accounted for as such by HCI.  (Jackson Depo. pg. 96-97; Tr. Day 4, p. 32-33).  Then, beginning May 4, 2005, and continuing through May 1, 2009, HCI paid LFP $8,400 per month to license the HUSTLER marks.  (Tr. Day 4, p. 34; Cummings Depo. p.

5

123; Exhibit 9 to Jackson Depo.).  Each of the checks issued by HCI to LFP identified the payment as "license fee" expenses.  (Cummings Aff. at ¶ 17; Exhibit 3 to Cummings Aff.).  Jackson also testified that he recorded these payments on HCI's financial records as "license fee expenses."  (Jackson Depo. pg. 96-97; Tr. Day 4, p. 34).  Jackson further testified that HCI identified these license fee expenses on its annual tax returns, which were signed by Jimmy under penalty of perjury, and claimed a deduction for such expenses for the years 2004-2007, resulting in a substantial personal tax savings for Jimmy.  (Jackson Depo. pp. 114- 124; Tr. Day 4, p. 40; PX 98-105).

HCI's right to use the HUSTLER marks arose solely from LFP's authorization and HCI's licensing payments to LFP.  In addition, HCI was clearly aware of the value of the HUSTLER marks, as it paid LFP nearly $600,000, to use the marks.  HCI paid this fee to attain the name recognition, prestige, and goodwill associated with the HUSTLER marks in the adult entertainment industry.

Jimmy's half-hearted suggestion that these license fee payments constituted capital contributions was thoroughly refuted at the Partnership Trial.  Indeed, his own accountant testified that "they're not capital contributions going out."  (Tr. Day 4, p. 33).  He agreed that "as far as the IRS is concerned" that payment "was not a capital contribution by Jimmy Flynt, but an expense incurred by HCI."  (Tr. Day 4, p. 40).  Thus, there can be no reasonable dispute that the payments made by HCI were license fee payments made in exchange for the use of the marks.

Moreover, Jimmy had nearly an identical licensing arrangement with the HUSTLER HOLLYWOOD Monroe store.  On January 1, 2001, Jimmy executed a License Agreement with LFP on behalf of Hustler Hollywood-Ohio, Inc. ("HH-Ohio"), which allowed HH-Ohio to use the HUSTLER marks in connection with that retail operation.  (PX 84; Tr. Day 4, p.

29). Jimmy and HH-Ohio then went on to make substantial monthly payments to LFP for the continued use of the marks. (Tr. Day 4, p. 29; Jackson Depo. pp. 46-47). Accordingly, the license arrangement between Plaintiffs and HCI was not unique; it was consistent with the only other store that Jimmy owned in his name. In total, Jimmy (through HCI and HH-Ohio) paid licensing fees to LFP in excess of $3 million to use the HUSTLER marks. There can be no doubt that Defendants have no ownership of the HUSTLER mark, and that Jimmy was well aware that if he intended to use the marks, Jimmy needed permission from Plaintiffs and would have to pay for them.

### D. HCI BREACHES THE LICENSE AGREEMENT, AND LFP TERMINATES HCI'S LICENSE FOR THE HUSTLER MARKS

From July 2003 through May 2009, HCI made license payments to LFP for use of the HUSTLER marks. For years 2001 through 2004, Jimmy also made license payments from HUSTLER HOLLYWOOD Monroe to LFP for use of HUSTLER marks. From 2003 through 2009, Jimmy was a W-2 employee for LFP, then HHEI and, ultimately, FMG. During this time, Jimmy gave deposition testimony in a dissolution of marriage case in Kentucky involving him and his wife, Bernice, in June 2003. Jimmy testified that he was a "consultant" for Larry and LFP. (Jimmy 2003 Depo. p. 9, 22, 24). With respect to his use of the HUSTLER mark, Jimmy testified that:

- "He [Larry] owns it 100 percent. So any - the licensing fee, the monies that I got to pay for the initial inventory, the licensing arrangements, that's all I know. The only money as I swear under oath that I got in 2001 was $127,000 with my hand on the bible." (Jimmy 2003 Depo. p. 53).

- "I pay him [Larry] an enormous licensing arrangement for that place up there [HH-Ohio]." (Jimmy 2003 Depo. p. 28).

- "Hustler Hollywood is the name that my brother came up with in the development of the retail stores. And that's what I do is I find locations for him and he builds stores." (Jimmy 2003 Depo. p. 46).

Thus, even Jimmy believed these payments to be license fees, not capital contributions.[2]

Jimmy was terminated from FMG as of June 15, 2009. (PX 87). From June through August of 2009, HCI did not make license payments to LFP. (Jackson Depo. pg. 92). While HCI had occasionally made late license fee payments in the past, it had always paid in full within a reasonable time. (Exhibit 3 to Cummings Aff.).

On September 3, 2009, after three months of non-payment by HCI, LFP's president, Michael H. Klein, sent a letter to HCI demanding that it make the required license payments. (PX 88). HCI did not make any effort to cure its default, and on September 14, 2009, Klein sent HCI a letter revoking and terminating its license to use the HUSTLER marks and providing it one week to remove the HUSTLER marks from its store. (Cummings Aff. at ¶ 19; Exhibit 4 to Cummings Aff.). After HCI ignored LFP's repeated requests to stop using the HUSTLER marks, LFP's attorneys sent HCI a cease and desist letter, demanding that HCI remove the HUSTLER marks from its store. (PX 89). HCI disregarded that demand and has admittedly continued to use the HUSTLER marks despite the termination of the license agreement. (Jimmy Depo. p. 9).

### III. LAW AND ARGUMENT

In order to obtain a permanent injunction, a party must demonstrate: (1) success on the merits; (2) irreparable injury in the absence of an injunction; (3) the balance of the irreparable injury outweighing any harm the issuance of a injunction would cause to others; and (4) the public interest would be served by the issuance of an injunction. *See Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998); *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001). *See also eBay*

---

[2] This Court found that Jimmy "was telling the truth at that time, although he may now be deceiving himself..." (Partnership Opinion, p. 13).

*Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, (2006); *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success").

Plaintiffs' Amended Complaint alleges five related causes of action: (1) breach of contract; (2) violation of 15 U.S.C. §1125(a) by the creation of a false designation of origin or false impression of association; (3) federal unfair competition under 15 USC §1125(a); (4) violation of the Ohio Deceptive Trade Practices Act pursuant to R.C. § 4165.01; and (5) Common Law Unfair Competition.  As set forth below, Plaintiffs have met their burden with respect to all of the four factors for the granting of a permanent injunction based on the above claims.  Consequently, Plaintiffs' Motion for Summary Judgment and Permanent Injunction should be granted.

### A. PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE HCI IS A FORMER LICENSEE WHO IS CONTINUING TO USE THE HUSTLER MARKS OWNED BY LFP IP.

The analysis for a claim of trademark infringement under the Lanham Act is the same as that for false designation of origin, false impression of association, the Ohio Deceptive Trade Practices Act, federal unfair competition, and Ohio common law unfair competition.  *See, e.g., Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 288 (6th Cir. 1997); *DeGidio v. West Group Corp.*, 355 F.3d 506, 510 (6th Cir. 2004); *see also Worthington Foods, Inc. v. Kellogg Co.*, 732 F.Supp. 1417, 1431 (S.D. Ohio 1990) ("an analysis appropriate for a determination of liability under § 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act); *Mister Twister, Inc. v. JenEm Corp.*, 710 F.Supp. 202, 203-04 (S.D. Ohio 1989) ("the same substantive standard applies in all of plaintiff's claims of trademark

infringement and unfair competition [under 15 U.S.C. §§ 1114 and 1125, R.C. § 4165.02 and the Ohio common law]"); *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks"); *Victoria's Secret Stores v. Atrco Equipment Co*., Inc., 194 F. Supp. 2d 704, 724 n.8 (S.D. Ohio 2002) (finding analysis under federal law "applies to trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes"). Thus, in order to prevail, Plaintiffs must simply demonstrate that they are the owners of a valid trademark, that Defendants are using the marks in commerce, and that Defendants' use of the mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.  *See Daddy's Junky Music Stores,* 109 F.3d at 280; *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

### 1.    Plaintiffs Have Ownership Of A Valid Trademark.

There are no genuine issues of material fact that Plaintiffs own the marks at issue because (a) LFP IP is the owner of the federally-registered HUSTLER marks at issue, and (b) Defendants were former licensees of Plaintiffs.  As a result of this license agreement, Defendants have admitted that Plaintiffs have superior rights to the marks and any prior common law rights claimed by Defendants are extinguished by the license.

### a.    The Federally-Registered HUSTLER Marks Are Owned By LFP IP.

Federal registration of a trademark is an extraordinary right which provides numerous benefits to the owner.  *See generally*, 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §19:9, 19-27 (4th Ed. 2004). "Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark

is valid, ...and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.* 502 F.3d 504, 513 (6th Cir. 2007); *see also* 15 U.S.C. § 1115(a) (registration on the principal register is *prima facie* evidence of the validity of the mark).

Plaintiffs' ownership of a valid trademark is evidenced by the thirty-two trademark registrations containing HUSTLER as the sole or dominant feature of the mark which are owned by LFP IP and have been licensed to LFP for use and sublicensing. (*See* Exhibit 1 to Cummings Aff.).  Moreover, Plaintiffs are the owners of numerous unregistered HUSTLER marks based on decades of use for a variety of adult entertainment related goods and services.

### b. An Oral Or Implied License Agreement Existed Between LFP And HCI.

A license agreement does not have to be set forth in a written document, but can be an oral agreement between the parties.  *Letica Corp. v. Sweetheart Cup Co.*, 805 F.Supp. 482, 487 (E.D. Mich. 1992); *Unicasa Marketing Group, LLC v. Spinelli*, No. 04-cv-4173, 2007 U.S. Dist. LEXIS 16628, at * 6 (D. N.J. March 7, 2007); *Oreck Corp. v. Thomson Consumer Electronics, Inc.*, 796 F.Supp. 1152, 1158 (S.D. Ind. 1992); *Council of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida, Inc.*, 1978 U.S. Dist. LEXIS 15903, 200 U.S.P.Q. 282, 289 (S.D. Fl. 1978); *Louisiana-Pacific Corp. v. Nu-Sash of Pittsburgh, Inc.*,  1974 U.S. Dist. LEXIS 6057, 184 U.S.P.Q. 593, 596-97 (W.D. Pa. 1974). LFP and HCI established an oral license agreement for use of the HUSTLER marks in connection with the Hustler Cincinnati store from the year 2000 until termination of that agreement by Plaintiffs in September 2009.  (Larry Depo. p. 164 (Jimmy had the right to use the Hustler name "because I gave him the right to use it.")).  This oral agreement is evidenced by the nearly $600,000 in payments to LFP from HCI expressly identified by

HCI on the checks and for tax purposes as "licensee fee" expenses. (Jackson Depo. ps. 8, 51-52, 70-71, 85-87, 90-91, 108-11, 114-15, and 119-21; Tr. Day 4, p. 34; PX 98-105, 159-160).

Even if no oral license agreement existed between the parties, an implied agreement arose based upon the conduct of LFP and HCI from 2000 to 2009. The law is clear that a license agreement can be implied from the course of conduct between the parties, even where no formal agreement exists. *De Forest Radio Tel. & Tel. Co. v. U.S.*, 273 U.S. 236, 241 (1927); *Villanova University v. Villanova Alumni Educational Foundation, Inc.*, 123 F.Supp.2d 293, 307 (E.D. Penn. 2000); *Lutheran Assoc. of Missionaries and Pilots, Inc. v. Lutheran Assoc. of Missionaries and Pilots, Inc.*, No. 03-6173, 2004 U.S. Dist. LEXIS 27164, at * 26 (D. Minn. November 19, 2004); *Exxon Corp. v. Oxxford Clothes, inc.*, 109 F.3d 1070, 1076 (5th Cir. 1997); *Dumdei v. Certified Financial Planner Board of Standards, Inc.*, No. 3:98-CV-1938-H, 1999 U.S. Dist. LEXIS 15624, at * 14 (N.D. Tex. October 1, 1999); *The Nestle Co., Inc. v. Nash-Finch Co.*, 4 U.S.P.Q.2d 1085, 1088-89 (T.T.A.B. 1987). Here, the conduct of Plaintiffs and Defendants demonstrates the existence of a license agreement between the parties for use of the HUSTLER marks.

An implied license agreement will be found where permission to use the trademark is given by the owner coupled with the exercise of reasonable quality control over the licensee. *Villanova University,* 123 F.Supp.2d at 307; *Fitger's On-the-Lake, LLC v. The Fitger Co., LLC,* No. 07-CV-4687, 2007 U.S. Dist. LEXIS 93378, at *6-8 (D. Minn. December 19, 2007); *see also Embedded Moments, Inc. v. Int'l Silver Co.*, 648 F.Supp. 187, 194 (E.D.N.Y. 1986). Formalized control is not required to find an implied license; only minimal control is required. *Lutheran Assoc. of Missionaries and Pilots*, 2004 U.S. Dist. LEXIS 27164, at *28. Moreover, a showing that there was no decline in the quality of the

goods and services provided by the licensee in connection with the mark indicates that sufficient quality control was exercised by the licensor. *The University Book Store v. The Board of Regents of the University of Wisconsin System*, 33 U.S.P.Q.2d (BNA) 1385, 1994 TTAB LEXIS 8, at *39, 62 (TTAB July 19, 1994). Finally, the amount of required quality control over the licensee is lessened "[w]here the license parties have engaged in a close working relationship, and may justifiably rely on each parties' intimacy with standards and procedures to ensure consistent quality, and no actual decline in quality standards is demonstrated." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991); *see also Embedded Moments*, 648 F.Supp. at 194; *Dept. of Parks and Recreation for the State of California v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1132 (9th Cir. 2006).

An implied license agreement arose between LFP and HCI based upon their conduct from 2000 to September 2009 when Plaintiffs terminated the implied licensing arrangement. As discussed above, HCI's own accountant, financial records and checks to LFP expressly recognize the nearly $600,000 in payments as "license fee" expenses. (Tr. Day 4, p. 34). In fact, HCI deducted the expenses on its tax returns as "license fees" pursuant to the license agreement every year it made such payments to LFP, thereby reducing Jimmy's annual tax liability. (Jackson Depo. ps. 108-11, 114-15, 119-21, and 134-35; Tr. Day 4, p. 37-40). This license arrangement is consistent with Jimmy's execution of a prior license agreement for HH-Ohio and similar license fee payments. (PX 84; Tr. Day 4, p. 29; Jackson Depo. pp. 46-47).

As licensor, LFP was active in controlling the quality of the goods and services provided by HCI at the Hustler Cincinnati location. As discussed above, Theresa and her management team performed quality control for all HUSTLER-branded products and stores, including HCI. (Theresa Depo. p. 43). Prior to this litigation, and during Theresa's

control over quality at HCI, there have been no complaints from customers as to the quality of goods and services at HCI. (Dustin Depo. ps. 30-31). Moreover, LFP routinely examined HCI's financial statements and sales reports, and HCI called in their sales numbers on a nightly basis. (Cummings Depo. p. 115).

The extent of the quality control performed by Theresa Flynt and her team on behalf of Plaintiffs exceeded that required given the relationship between HCI and LFP. Until recently, Jimmy and Dustin had been employees of LFP-related entities for several decades, and Jimmy had been a director of LFP. (PX 83, 152; Tr. Day 4, p. 33-34; Dustin Depo. p. 19-20). They worked in several facets of the organization and Jimmy himself operated the HUSTLER HOLLYWOOD store located in Monroe, Ohio for LFP. (Tr. Day 3, p. 72). Jimmy, as an employee of LFP and FMG, and a director of LFP, also had quality control responsibilities and fiduciary obligations while he operated HCI. Thus, as was the case in *Taco Cabana* and *Embedded Moments*, Plaintiffs would have been justified in relying upon HCI's "intimacy with standards and procedures to ensure consistent quality" for the HUSTLER marks, especially given the lack of any decline in the quality of goods and services provided by HCI during the license agreement. *See Taco Cabana*, 932 F.2d at 1121. That Plaintiffs chose to engage in such quality control through Theresa and her management team only serves to further demonstrate the existence of the license agreement between the parties for use of the HUSTLER marks.

Therefore, based upon the foregoing, a valid license agreement, whether oral or implied, existed between the parties.

### c.    The Existence Of A License Precludes Defendants From Challenging Ownership Or Validity.

Now that Jimmy has lost his partnership claims, he will assert that he was the first to use the HUSTLER mark with respect to retail stores, and accordingly, that he is the owner of the mark for retail stores.  Contrary to Jimmy's assertion, however, HCI was not the first entity to use HUSTLER with respect to retail stores.  Indeed, the first HUSTLER HOLLYWOOD, which opened in Sunset, California in 1998, was the first entity to use HUSTLER for retail stores.  HCI opened in 2000.

Moreover, any alleged rights held by HCI or Jimmy to the HUSTLER marks by virtue of Hustler News & Gifts, Inc.'s ("HNG") use are equally meritless because HNG was not a retail store.  As conceded by Dustin and Jackson, HNG and HCI were completely separate corporate entities with vastly different marketing and operational strategies and offered completely different goods and services, i.e., HNG was a newsstand, whereas HCI was a retail store modeled after HUSTLER HOLLYWOOD.  (Jackson Depo. p. 29-30; Dustin Depo. p. 21, 26).  Indeed, Jackson testified that HNG and HCI are "completely different." (Jackson Depo. p. 30).  Thus, HCI cannot bootstrap HNG's prior use of the marks to its benefit.[3]

Notwithstanding, even if Jimmy could establish first use of HUSTLER for retail stores by virtue of tacking use back to HNG, such rights were extinguished through the license agreement between HCI and LFP.   "A licensee's prior claims of any independent

---

[3] Moreover, even if HCI was a continuation of HNG (of which there is no evidence), HNG abandoned the marks when it closed down.  A mark is deemed abandoned under the Lanham Act where its use has been discontinued without intent to resume use.  15 U.S.C. § 1127.  Such intent can be inferred from the circumstances surrounding the cessation of use.  *Id.*  Here, even if HNG held any rights in the HUSTLER marks, they were lost when HNG presumptively abandoned the marks when it ceased use and closed down the business permanently with no intent to resume operations.   There was an eight month gap between HNG closing and HCI opening. (Jimmy Depo. p. 34-35).  By the time HCI opened, LFP was already using the HUSTLER HOLLYWOOD name in connection with a retail store.  (Tr. Day 4, p. 143).

rights to a trademark are lost, or merged into the license, when he accepts his position as licensee, thereby acknowledging the licensor owns the marks and that his rights are derived from the licensor and enure to the benefit of the licensor." *Hot Stuff Foods, LLC v. Mean Gene's Enterprises, Inc.*, 468 F.Supp.2d 1078, 1095 (D. S. Dakota 2006) (citations omitted); *see also Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2nd Cir. 1986) (a licensee who enters into a licensing agreement acknowledges the licensor's superior rights to the marks); *Dress for Success Worldwide v. Dress 4 Success*, 589 F.Supp.2d 351, 359 (S.D.N.Y. 2008) (whether licensee had any prior rights is a moot question because the license agreement extinguished any that had existed); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F.Supp.2d 914, 923 (C.D. Ill. 2000) (licensee's claims of independent rights were lost or merged into license when he accepted his position as licensee and acknowledged that the licensor owns the marks and that his rights are derived from and inure to the benefit of the licensor).  Simply put, if Jimmy or HCI had ownership of the mark, they would not have needed to enter into the license to use them.  *A&L Labs., Inc. v. Bou-matic LLC,* 429 F.3d 775, 781 (8th Cir. 2005).

Jimmy and HCI will also assert that the HUSTLER marks are invalid, a position which is completely contrary to his partnership claims.  However, because HCI was a licensee, it is estopped from contesting the validity of the licensor's title.  *Westco Group, Inc. v. K.B. & Associates, Inc.*, 128 F.Supp.2d 1082, 1086 (N.D. Ohio 2001) (citations omitted).  The licensee's entrance into the licensing agreement is an agreement that the licensor is the owner of the trademark.  *Medd v. Boyd Wagner*, 132 F.Supp. 399, 405-06 (N.D. Ohio 1955); *Chrysler Motors Corp. v. Alloy Automotive Co., Inc.*, 661 F.Supp. 191, 192-93 (N.D. Ill. 1987).   HCI, as licensee, has agreed by its entering into the license

16

agreement that Plaintiffs are the owner of the trademark and is estopped from raising questions with regard to validity. *Medd*, 132 F.Supp. at 405-06.

In sum, both the federal trademark registrations and Defendants' status as licensees definitively establish the fact that Plaintiffs are the owners of the valid HUSTLER marks.

### 2. Defendants Are Using Plaintiffs' HUSTLER Marks.

There is no dispute that Defendants are making use of the HUSTLER marks in the conduct of business at the Hustler Cincinnati store located at 411 Elm Street in Cincinnati, Ohio. (Jimmy 2010 Depo. p. 9-10). Not only is the mark prominently displayed on signage outside the store, but Dustin Flynt is also admittedly making prominent use of the mark on business cards he uses when conducting business on behalf of HCI at trade shows and other events. (Dustin Depo. p. 36-39). As admitted by Jimmy, HCI has greatly benefited from Plaintiffs' advertisement of HUSTLER HOLLYWOOD in Monroe, Ohio. (Jimmy Depo. p. 10).

### 3. A Likelihood Of Confusion Is Demonstrated By HCI's Continued Use After Plaintiffs' Termination Of The License Agreement Between HCI and LFP.

HCI's blatant and continued use of the HUSTLER marks after termination of its license agreement with LFP establishes the likelihood of confusion prong in the infringement analysis. Where a former licensee continues to use a trademark after the trademark license has been cancelled, that continued use satisfies the likelihood of confusion test and constitutes trademark infringement. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *Westco Group, Inc. v. K.B. & Associates, Inc.*, 128 F.Supp.2d 1082, 1091 (N.D. Ohio 2001); *Molly Maid, Inc. v. Carlson*, No. 2:08-cv-11736, 2008 U.S. Dist. LEXIS 50544, at *6 (E.D. Mich. July 1, 2008); *Blue Cross & Blue Shield Mutual of Ohio v. Blue Cross and Blue Shield Association,* 110 F.3d

318, 333 (6th Cir. 1997); *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 649 (6th Cir. 1982); *Shephard's Co. v. The Thomson Corp.*, No. C-3-99-318, 1999 U.S. Dist. LEXIS 21051, at *16-17 (S.D. Ohio July 15, 1999) (citation omitted).

"There is an especially strong need for injunctive relief 'when the case involves a former licensee because, after a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder.'" *Molly Maid*, 2008 U.S. Dist. LEXIS 50544 at *6 (citation omitted). Thus, the "likelihood of success of the merits is [...] very substantial" where the license was clearly violated, the plaintiff had a right to terminate, and in fact did terminate the agreement. *KFC Corp. v. Goldey*, 714 F.Supp. 264, 267 (W.D. Ky. 1989). Here, a valid license agreement, as discussed below, governed HCI's use of the HUSTLER marks until LFP terminated that license in June 2009. Thus, Plaintiffs have conclusively demonstrated the likelihood of confusion prong of the infringement analysis.

Based on the foregoing, Plaintiffs have demonstrated that they are entitled to judgment as a matter of law on the claims set forth in their Amended Complaint.

## B. PLAINTIFFS WILL BE IRREPARABLY HARMED IF DEFENDANTS' USE OF THE HUSTLER MARKS IS NOT PERMANENTLY ENJOINED.

Where a plaintiff establishes a likelihood of success on the merits of a claim for infringement or unfair competition, irreparable harm necessarily follows. *See Wynn Oil Co. American Way Service Co.*, 943 F.2d 595, 600 (6th Cir. 1991); *Shephard's Co. v. The Thomson Corp.*, No. C-3-99-318, 1999 U.S. Dist. LEXIS 21051, at *24 (S.D. Ohio July 15, 1999) (citation omitted). "The law of this Circuit holds that no particular finding of likelihood of entry or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165

F.3d 1047, 1056 (6th Cir. 1999). Here, Plaintiffs have established that they are entitled to judgment as a matter of law based upon HCI's continued use of the HUSTLER marks after termination of the oral or implied license agreement. Thus, Plaintiffs have established that irreparable harm will result from HCI's continued use of the HUSTLER marks.

### C. THE THREAT OF HARM TO PLAINTIFFS GREATLY OUTWEIGHS THAT TO HCI.

Where the plaintiff is an authorized owner of a trademark and the defendant is improperly using that mark, the threatened harm to the plaintiff outweighs the threatened harm to the defendant. *KFC Corp. v. Goldey*, 714 F.Supp. 264, 267 (W.D. Ky. 1989) (citations omitted). Plaintiffs have established ownership in the HUSTLER marks and the improper use of that mark both through HCI's continued use of the mark after termination of the oral or implied license agreement and under the likelihood of confusion analysis.

The balance of harms weighs heavily in favor of Plaintiffs. Plaintiffs do not seek to put Jimmy or HCI out of business. Plaintiffs merely seek to stop HCI from infringing on the HUSTLER marks and engaging in unfair competition. In other words, Plaintiffs only seek to force HCI to comply with its legal obligations. Meanwhile, the harm to Plaintiffs is substantial. For example, HCI has a Facebook page advertising for "Jimmy Flynt's Cincinnati Boutique," which improperly uses the HUSTLER marks. (Exhibit 4 to Dustin Depo.). Thus, the significant harm to Plaintiffs decidedly outweighs the relatively slight harm to HCI.

### D. THE PUBLIC INTEREST IS BEST SERVED BY ISSUING A PERMANENT INJUNCTION AGAINST HCI'S USE OF THE HUSTLER MARKS.

The public interest is especially served where a former licensee is continuing use of the licensor's mark because the licensee's status increases the probability of consumer

confusion. *See Papa John's Int'l, Inc. v. Specktacular Pizza, Inc.*, No. 3:05CV-515-H, 2005 U.S. Dist. LEXIS 29411, at *16 (W.D. Ky. Nov. 21, 2005); *Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2nd Cir. 1986); *KFC Corp. v. Goldey*, 714 F.Supp. 264, 267 (W.D. Ky. 1989). "There is an especially strong need for injunctive relief 'when the case involves a former licensee because, after a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder.'" *Molly Maid,* 2008 U.S. Dist. LEXIS 50544, at *6 (citation omitted).

In the instant matter, HCI is a former licensee who has continued use after termination of the oral or implied license agreement by Plaintiffs. Moreover, HCI's use of the mark HUSTLER CINCINNATI is likely to confuse the public and prevent Plaintiffs from controlling its own product's reputation. *See Blockbuster Ent. Group v. Laylco, Inc.*, 869 F.Supp. 505, 516 (E.D. Mich. 1994) (holding that in addition to protecting consumers from confusion, the public interest is served in protecting the right of a trademark owner to control its own product's reputation) (citation omitted). Thus, the public interest is best served in granting Plaintiffs a preliminary injunction against HCI's use of the HUSTLER marks.

### E. DEFENDANTS' REMAINING COUNTERCLAIMS SHOULD BE DISMISSED BECAUSE OF PLAINTIFFS' UNDENIABLE RIGHTS TO THE MARKS.

Any remaining claims in Defendants' Counterclaim should likewise be dismissed as a result of the foregoing trademark analysis. Counts One through Four of Defendants' Counterclaim were disposed of as a result of the Partnership Opinion.[4] Portions of counts

---

[4] Count One sought a dissolution and accounting of partnership, which was clearly dismissed by the Partnership Opinion. Count Two asserted a claim for breach of fiduciary duty. However, no fiduciary duty exists between Jimmy and Larry in the absence of a partnership. (*See* Counterclaim, ¶ 221). Thus, Count

Five through Seven may remain, but relate to trademark issues that fall within the above discussion.  Consequently, they are meritless and should be dismissed in their entirety.

Specifically, Count Five seeks a declaratory judgment as to the parties' rights to the HUSTLER marks.  As set forth above, the facts plainly reveal that Plaintiffs are the rightful owners and users of the marks, and Defendants have no rights whatsoever in the marks. Accordingly, Count Five should be dismissed.

Count Six combines several claims, including unfair competition, abuse of process, malicious bad faith pursuit of litigation, and tortious interference.  All of these claims arise out of Defendants' belief that "this action is not founded upon good faith but was instituted with the intent and purpose of harassing and injuring Defendants." (Counterclaim, ¶ 258). However, as both the Partnership Trial and this Motion demonstrate, Plaintiffs' claims are not only "founded upon good faith," they are entirely meritorious.  Thus, Count Six cannot survive.

Finally, Count Seven seeks injunctive relief arising out of the HUSTLER marks.  In particular, Defendants request an injunction to prevent Plaintiffs from operating their new HUSTLER HOLLYWOOD store in Cincinnati.  This claim was effectively denied as a result of both the Partnership Trial and the hearing on Defendants' Motion for Temporary Restraining Order.  However, to the extent any claim remains, it should be dismissed based on the foregoing discussion.  Simply put, Defendants have no rights to the HUSTLER marks, and have no basis to prevent Plaintiffs or their affiliates from lawfully operating a competing store.

---

Two was dismissed by the Partnership Opinion. Count Three, for fraud and unjust enrichment, is likewise based on Jimmy's partnership allegations. (*See, e.g.,* Counterclaim, ¶ 238).  Finally, Count Four states a wrongful termination claim.  Jimmy alleges that his termination was in violation of public policy, as he was a minority shareholder who was fired without any legitimate business reason. (*See* Counterclaim, ¶ 249).  This claim cannot survive the Partnership Opinion as the Court plainly rejected any suggestion that Jimmy was a partner or minority shareholder in LFP and its affiliates.

**F.    PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES DUE TO HCI'S WILLFUL AND DECEPTIVE INFRINGEMENT OF THE HUSTLER MARKS.**

Under the Lanham Act, an award of attorneys' fees is within the discretion of the district court. *T. Marzetti Co. v. Roskam Baking Co.*, No. 2:09-CV-584, 2010 U.S. Dist. LEXIS 61500 (S.D. Ohio May 27, 2010). 15 U.S.C. § 1117(a) provides that courts may award reasonable attorneys' fees to the prevailing party in "exceptional" cases. Thus, section 1117(a) yields two inquiries: (1) whether a plaintiff was a "prevailing party," and (2) whether this case was "exceptional." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Given the foregoing discussion, Plaintiffs are prevailing parties.

With respect to the second inquiry, although the statute does not define "exceptional," the Sixth Circuit has held that "a case is not exceptional unless 'the infringement was malicious, fraudulent, willful, or deliberate.'" *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004) (quoting *Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir. 1982)). However, a prevailing defendant need not show bad faith on the part of the plaintiff in order to prove that a case is "exceptional" under the Act. *Marzetti*, 2010 U.S. Dist. LEXIS 61500 at *31. Knowledge that permission is required to use a mark is evidence of willful or malicious infringement. *Audi*, 469 F.3d at 550.

Similarly, the Ohio Deceptive Trade Practices Act provides for fee awards in cases where a defendant is found to have "wilfully engaged" in what the defendant knew to be a "deceptive" trade practice. R.C. § 4165.03(B).

Plaintiffs are entitled to recover their attorneys' fees due to Defendants' malicious, willful, and deliberate infringement of the HUSTLER marks. As set forth above, Defendants were aware that they needed permission from Plaintiffs in order to use the

HUSTLER marks. Indeed, HCI (and its owner Jimmy) repeatedly asked for and obtained permission to use the HUSTLER marks over the past 30 years.

Perhaps more importantly, Defendants' current position is contradicted by their own past testimony, and is not asserted in good faith. As the Court held in the Partnership Opinion, "Jimmy's testimony ... was vague, evasive and inconsistent, and impeached by his own sworn testimony in other court proceedings." (Partnership Opinion p. 13). Jimmy's trademark arguments are similarly suspect. They are contradicted by many years of license payments, at least one formally-executed license agreement, and Jimmy's own prior testimony. Jimmy has already been dishonest with this Court once in the Partnership Trial. In order to further pursue his trademark claims and defenses, he will have to do so again. The Court should not permit his deceit to go unpunished.

In sum, Defendants' bad faith actions have forced Plaintiffs to spend enormous sums of money to protect its intellectual property and defend against baseless counterclaims that Jimmy knows are without merit. Thus, based on Defendants' willful, deceptive, and dishonest actions, this is an exceptional case, and Plaintiffs should be awarded their attorneys' fees.

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiffs are entitled to a permanent injunction barring Defendants from further use of the HUSTLER marks, a dismissal with prejudice of all remaining Counterclaims of Defendants, and recovery of their attorneys' fees due to HCI's malicious, willful, and deliberate infringement of Plaintiffs' HUSTLER marks. Plaintiffs respectfully request the Court enter a permanent injunction in the form attached hereto as Exhibit B.

Respectfully submitted,

/s/ Mark A. Vander Laan
Mark A. Vander Laan (0013297)
E-Mail: mark.vanderlaan@dinslaw.com
Amanda P. Lenhart (0072517)
E-Mail: amanda.lenhart@dinslaw.com
Joshua A. Lorentz (0074136)
E-Mail: joshua.lorentz@dinslaw.com
Robert M. Zimmerman (0079584)
Email: robert.zimmerman@dinslaw.com
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone:        (513) 977-8200
Fax:           (513) 977-8141
**Attorneys for Plaintiffs**
**L.F.P., Inc., LFP IP, LLC, and Larry C. Flynt**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been duly served upon the following

by the Court's CM/ECF system this 8th day of June, 2011:

Robert W. Hojnoski, Esq.
Carrie A. Masters, Esq.
REMINGER CO., LPA
525 Vine Street, Suite 1700
Cincinnati, OH 45202
Email: rhojnoski@reminger.com
        cmasters@reminger.com

**Attorneys for Defendants**
**Hustler Cincinnati, Inc. and**
**Jimmy R. Flynt**

/s/ Mark A. Vander Laan

1916628v2

24