# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **LFP IP, LLC, et al.,** | : | Case No. 1:09cv913 |
| | : | |
| Plaintiffs, | : | Judge Bertelsman |
| | : | |
| vs. | : | Magistrate Judge Bowman |
| | : | |
| **HUSTLER CINCINNATI, INC.,** | : | |
| **et al.,** | : | |
| | : | **PLAINTIFFS' RENEWED MOTION** |
| Defendants. | : | **FOR SANCTIONS** |
| | : | |
| | : | |

Pursuant to Fed. R. Civ. P. 11 ("Rule 11"), 28 U.S.C. § 1927 and the Court's inherent power, Plaintiffs LFP IP, LLC ("LFP IP"), L.F.P., Inc. ("LFP"), and Larry C. Flynt ("Larry"), and Counterclaim Defendants Flynt Management Group, LLC ("FMG"), HH-Entertainment, Inc. ("HHEI"), and The Larry Flynt Revocable Trust (the "Trust") (collectively, "Plaintiffs") respectfully renew their Motion for Sanctions (Doc.#219) and request an order awarding them sanctions against Defendants Jimmy R. Flynt ("Jimmy"), Hustler Cincinnati, Inc. ("HCI") (collectively, "Defendants"), and Defendants' counsel.  Specifically, pursuant to 28 U.S.C. § 1927 and the Court's inherent power, Plaintiffs seek reasonable attorneys' fees and expenses incurred because of Defendants' and Defendants' counsel's conduct in advancing meritless defenses and counterclaims and "unreasonably and vexatiously" multiplying the proceedings in this case.  Pursuant to Rule 11, Plaintiffs seek their reasonable attorneys' fees and expenses incurred in responding to Defendants' frivolous Second Amended Counterclaim.

The bases for Plaintiffs' Motion are set forth more fully in the attached Memorandum in Support.

Respectfully submitted,

/s/ Mark A. Vander Laan
Mark A. Vander Laan (0013297)
E-Mail: mark.vanderlaan@dinsmore.com
Amanda P. Lenhart (0072517)
E-Mail: amanda.lenhart@dinsmore.com
Joshua A. Lorentz (0074136)
E-Mail: joshua.lorentz@dinsmore.com
Robert M. Zimmerman (0079584)
Email: robert.zimmerman@dinsmore.com
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone:        (513) 977-8200
Fax:          (513) 977-8141

**Attorneys for Plaintiffs L.F.P., Inc.,
LFP IP, LLC, and Larry C. Flynt
and Counterclaim Defendants
Flynt Management Group, LLC,
HH-Entertainment, Inc. and
The Larry Flynt Revocable Trust**

<u>**MEMORANDUM IN SUPPORT**</u>

## I.    INTRODUCTION

This case returns to the Court's jurisdiction upon mandate of the Sixth Circuit Court of Appeals affirming the Court's judgment in this matter "in all respects." (*See* August 28, 2013 Opinion of the Sixth Circuit Court of Appeals ("Sixth Circuit Opinion") at 2).  Just as this Court determined, the Sixth Circuit found that Jimmy produced "nothing that could be deemed indicia of partnership," highlighting Jimmy's "self-serving" attempt to directly contradict his own "numerous sworn statements." (Sixth Circuit Opinion at 7).

In the almost four years of litigating this matter, Jimmy and Jimmy's counsel have continually asserted frivolous defenses and claims that have no factual or legal support.  The Court itself recognized that Jimmy must be "deceiving himself" with his partnership theory and found that this case was the "first time" anyone asked the Court "to find that his client committed perjury in another case."  (*See* Partnership Decision, p. 13; Transcript of October 11, 2011 Hearing, p. 19).  In the appeal of this matter, Defendants' counsel even went so far as to allege that the Court altered its judgment of the case based on the future employment of a law clerk. (Defendants' Appellate Brief at pg. 5).

The preposterous allegations Jimmy and Jimmy's counsel have made before the Court, their vexatious abuse of the judicial system, and Jimmy's use of the legal process to harass Plaintiffs is precisely the conduct intended to be deterred by the Court's inherent power, 28 U.S.C. § 1927, and Rule 11.  Therefore, they must be punished with appropriate sanctions.

## II.     FACTUAL BACKGROUND

### A.     Jimmy's Original Claims Against Larry

The first of Jimmy's recent lawsuits against Larry and his companies began in May of 2009 with an eviction lawsuit in the Hamilton County Court of Common Pleas. After one of Larry's businesses, Elm 411, LLC, sought to evict HCI from its retail location, HCI responded with several counterclaims.  HCI also filed its own action for declaratory judgment arising out of the eviction notice.  While Jimmy alleged that he and Larry were "lifelong business partners," he did not assert a partnership claim.  He certainly never even alluded to the employment or trust claims he asserted in this action.

Several months later, on December 17, 2009, Jimmy filed a Complaint in the Hamilton County Court of Common Pleas alleging that he was Larry's life-long business partner.  Jimmy also included various claims for fraud, unjust enrichment, wrongful termination, and breach of fiduciary duty.  Although Jimmy had been disinherited several months before, Jimmy did not assert any claim related to the Trust.  Larry filed a Motion to Dismiss, and Jimmy responded by amending his Complaint.  Larry filed another Motion to Dismiss, based in part on Jimmy's failure to state a claim and in part based on *forum non conveniens*.  Despite Jimmy's opportunity to amend his Complaint, Larry's Motion was granted on October 4, 2010.  However, prior to a final judgment being journalized, Jimmy filed an Ohio R. Civ. P. 41(A) voluntary dismissal.[1]  Through this procedural gamesmanship, Jimmy was able to avoid a final dismissal entry.

---

[1] Unlike the Federal Rules, Ohio R. Civ. P. 41(A) permits a plaintiff to unilaterally voluntarily dismiss claims any time before trial.

At the same time Jimmy filed his state court partnership claim, Larry filed this case in the Southern District of Ohio.  Initially, Larry, LFP, and LFP IP sought an injunction to prohibit Jimmy's use of the HUSTLER trademark after the termination of his license with Plaintiffs.  However, in the wake of the state court's dismissal of Jimmy's partnership claims, Jimmy asserted partnership and other theories in this action.  The parties agreed to hold a trial on the partnership issue in January of 2011 before deciding Plaintiffs' trademark claims.

Jimmy and Larry then engaged in intense discovery efforts over the next few months.  The parties exchanged voluminous documents and LFP made available its corporate records going back to the 1970s.  Counsel also conducted over 25 depositions, ranging from New York to Florida to California.  Jimmy was effectively allowed to discover the entire corporate history of LFP, and review nearly every document related to Larry's businesses.

### B.   The Trial of Jimmy's Partnership Claim to the Court

On January 19, 2011, the Court began a four-day bench trial on Jimmy's partnership claim.  Despite the extensive discovery Jimmy was afforded, he was unable to prove any partnership with Larry.  On the contrary, his theory was comprehensively disproven and his credibility tarnished.  In 1984, Jimmy had filed a Petition for Appointment of Conservator of the Estate of Larry wherein he identified Larry as "sole shareholder, director and chairman of the board" of LFP and its subsidiaries.  (PX 66).  Jimmy had also testified in a 1987 deposition that he had never "held any stock or ownership interest in LFP, Inc."  (PX 1, p. 8).

Most importantly, Jimmy was contradicted by his own sworn testimony in his divorce proceeding eight years prior.  In that proceeding, he clearly disclaimed any

interest in Larry's business empire, testifying that "Hustler is Larry Flynt." (*See* Partnership Decision, p. 13). Jimmy had no explanation for why his current partnership claims were directly contradicted by his own previous statements other than to suggest that he was "less than truthful" in his divorce case.

The Court disagreed, finding that Jimmy was telling the truth in his divorce case, and was "deceiving himself" with his partnership theory. (Partnership Decision, p. 13). In fact, the Court mused that this case was "the first time I ever had somebody come in here and ask me to find that his client committed perjury in another case." (Transcript of October 11, 2011 Hearing, p. 19). Accordingly, the Court dismissed Jimmy's partnership theory in its entirety.

### C.    Plaintiffs' Trademark Claims Against Jimmy and HCI

With Jimmy's partnership claim soundly defeated, the parties proceeded to brief Plaintiffs' trademark claims. Jimmy once again argued that things were not as they seemed. Notwithstanding the Partnership Decision, he claimed that undisputed license fee payments made to LFP were a "sham" and were in fact "capital contributions" to his "partner," Larry. Jimmy offered no evidence to support this contention other than his own self-serving testimony, which was refuted by voluminous records, Jimmy's own accountant's testimony, and Jimmy's divorce testimony.

The Court again rejected Jimmy's incredible arguments and found that Jimmy had infringed on Plaintiffs' trademark rights. The Court granted Plaintiffs' Motion for Summary Judgment and permanently enjoined Defendants from using the HUSTLER mark or any other trademark owned by Plaintiffs. (Trademark Decision, p. 22). Among other findings, the Court stated that "Jimmy's continued focus on the long history and equities of dealings between him and Larry are spillover from his arguments about the

existence of a partnership, which the Court previously rejected in the partnership decision." (Trademark Decision, p. 21).

### D. Jimmy's Claims for Wrongful Termination, Breach of Contract, and Promissory Estoppel Against Larry and His Companies

Undeterred by these two comprehensive defeats, Jimmy pressed on with yet more claims against Larry. On October 12, 2011, Jimmy filed a new case before this Court asserting claims for wrongful termination, breach of contract, and promissory estoppel. Jimmy now claimed that, instead of a partner, he was an employee of Larry's who could not be terminated. The Court noted that these new claims were "totally inconsistent with the position you took in the partnership part." (Transcript of November 17, 2011 Hearing, p. 10). Notably, Jimmy did not assert a claim for breach of oral agreement to make a trust provision, despite having learned about it (at the latest) a year earlier. (*See* Jimmy's Memorandum In Opposition to Motion to Dismiss Second Amended Counterclaim, p. 78 (identifying September 2010 as latest date Jimmy claims to have learned of breach of alleged trust promise)).

At this Court's instruction, Jimmy dismissed that case, and he amended his existing Counterclaim to include these employment theories of recovery, plus claims for fraud, unjust enrichment, and breach of fiduciary duty. Just as he had done with the trademark issue, Jimmy's Counterclaim ignored or sought to re-litigate the Court's prior decisions. Jimmy's Counterclaim also included, for the first time, a claim related to supposed promises in connection with the Trust worth potentially millions of dollars.

### E. Plaintiffs' Original Motion for Sanctions

On April 26, 2012, Plaintiffs filed their initial Motion for Sanctions against Jimmy and his counsel. (Doc. #219). In accordance with Rule 11, Plaintiffs served the

Motion for Sanctions on opposing counsel, but counsel obviously never withdrew the Counterclaim or took any remedial efforts within 21 days of service.  (A copy of Plaintiffs' previous service letter is attached as Exhibit B to Plaintiffs' original Motion for Sanctions (Doc. #219)).  Plaintiffs also moved for sanctions pursuant to 28 USC § 1927, which provides for an award of costs and fees where an attorney has "multiplie[d] the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.

Neither Jimmy nor his counsel filed a response to Plaintiffs' Motion for Sanctions.  As set forth in the Court's June 7, 2012 Order, the Court took the motion under submission and "caution[ed] defendants that the motion raises substantial issues of concern."  (Order, Doc. #222).  Ultimately, the Court denied the Motion for Sanctions without prejudice "so that a final judgment may be entered and any appeal taken." (Order, Doc. #239).

### F.    The Court's January 2, 2013 Decision

In the interim, the Court found again that Jimmy and Larry were not life-long confidantes and co-founders in its January 2, 2013 Opinion granting Plaintiffs summary judgment on the Counterclaims.  Rather, "their employment relationship mirrored their volatile personal relationship" and "there were periods of time when the two had disagreements and, as a result, Jimmy left his employment at Hustler."  (January 2, 2013 Memorandum Opinion and Order at 5).

More importantly, the Court focused on the fact that Jimmy was once more attempting to contradict his own sworn testimony, this time from the partnership trial, where he "expressly rejected the proposition that he was an 'employee.'"  (January 2, 2013 Memorandum Opinion and Order at 6).  The Court held that "there is no *evidence* – as opposed to the bare allegations of the counterclaim and Jimmy's declaration

concerning his 'belief' that he would have indefinite employment – that the two men ever expressed a *mutual* intent that Larry would employ Jimmy for life…". (January 2, 2013 Memorandum Opinion and Order at 6) (emphasis sic).

Similarly, the Court rejected Jimmy's promissory estoppel claim because Jimmy "pointed to no record evidence (again, as opposed to the mere allegations of his pleadings) that Larry made a 'clear and unambiguous' representation that 'could reasonably be interpreted as limiting the employer's ability to terminate the employment relationship.'" (January 2, 2013 Memorandum Opinion and Order at 8).

The Court found that Jimmy's public policy claim failed "because Jimmy has not identified any clear source of public policy." As the Court clarified, Jimmy "does not explain how the alleged loan requested by Larry constituted a 'security' under Ohio law, or how any securities law was violated. He similarly fails to cite any specific public policy regarding the family litigation in California, and there is no evidence that Jimmy was a minority shareholder in Hustler." (January 2, 2013 Memorandum Opinion and Order at 10).

The Court dismissed Jimmy's breach of fiduciary duty argument, emphasizing that the Court "has previously rejected Jimmy's claim that he and Larry were partners, thus, no fiduciary relationship exists on that basis. (January 2, 2013 Memorandum Opinion and Order at 13). Along those same lines, the Court stated that Jimmy's fraud claim could not succeed where "Jimmy has identified no specific instances in which Larry made material misstatements known to him to be false in order to mislead and harm Jimmy." (January 2, 2013 Memorandum Opinion and Order at 14). And unjust enrichment could not survive where "the undisputed evidence shows that [Jimmy] was compensated for his years of service, and the various property transfers about which he

complains were supported by consideration, even if [Jimmy] now believes such to have been inadequate in light of the events that eventually unfolded between the brothers." (January 2, 2013 Memorandum Opinion and Order at 15).

Finally, the Court agreed with Jimmy's own admission that his claim as to the Trust could not stand until Larry's death. (January 2, 2013 Memorandum Opinion and Order at 13).

Defendants appealed the judgments of the Court, and, unsurprisingly given the frivolous nature of all the claims asserted by the Defendants in this matter, the Sixth Circuit affirmed the Court "in all respects." (Sixth Circuit Opinion at 2).

## III.   LAW AND ARGUMENT

### A.   <u>The Court Should Award Sanctions Pursuant to its Inherent Power.</u>

The Court may use its inherent authority as "an independent basis for sanctioning bad faith conduct in litigation."[2]  *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002); *Chambers v. Nasco, Inc.* 501 U.S. 32, 42 (1991).  As the Sixth Circuit explained, a district court may award sanctions "when a party litigates 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Marietta*, 307 F.3d 501 at 513 (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)).  The Court's inherent power to sanction "derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *Id.*  Because Jimmy and Jimmy's counsel have shown bad faith and vexatiously multiplied proceedings by advancing meritless defenses and claims

---

[2] The Court does not have to first determine whether the conduct could be sanctioned under the rules or statutes before considering sanctions pursuant to its inherent authority.  *Chambers v. Nasco, Inc. 501 U.S. 32, 42.* (1991).

throughout the course of this case, the Court should use its inherent power to sanction this conduct and maintain the integrity of the Court.

Jimmy and Jimmy's counsel asserted the existence of a partnership relationship between Jimmy and Larry knowing such claim was completely meritless. Jimmy and Jimmy's counsel knew there was no evidence indicative of a partnership relationship, and, even more outrageous, they knew that Jimmy had sworn under oath in numerous legal proceedings that Larry was the sole owner of the LFP, Inc. The Court itself recognized the absurdity of this assertion, stating that Jimmy was "deceiving himself" and that this case was the "first time" anyone asked the Court "to find that his client committed perjury in another case." (*See* Partnership Decision, p. 13; Transcript of October 11, 2011 Hearing, p. 19). The fact that Jimmy and Jimmy's counsel would assert such a claim with this knowledge demonstrates that not only was Jimmy and Jimmy's counsel vexatiously and wantonly extending the proceedings in this case, but they also acted in complete disregard for the legal system and this Court's resources. It is apparent that asserting such a claim was solely for the purpose of harassing Larry and to cause unnecessary legal expenses. This is precisely the conduct that must be sanctioned through the Court's inherent power.

Even more, after two years of needless litigation and the Court rejecting their incredible arguments regarding partnership and trademark rights, Jimmy and Jimmy's counsel amended the counterclaim to assert causes that directly contradicted Jimmy's testimony at the partnership trial. (*See* January 2, 2013 Memorandum Opinion and Order at 5-6)(Regarding Jimmy's claim that he was promised employment for life, the Court found that during the partnership trial Jimmy "expressly rejected the proposition that he was an 'employee.'"). In considering Jimmy's new counterclaims, the Court

repeatedly found that there was "no evidence" of an employment agreement, "no record evidence" of any representations by Larry of a promise of employment, "no evidence" that Jimmy held ownership in the companies warranting fiduciary duties, "no evidence" of unlawful transfers of assets, and "no evidence" to support a claim for fraud. (*See* Memorandum and Opinion from January 2, 2013 at 6-14).

Jimmy and Jimmy's counsel knew there was no evidence to support their claims, but acted in bad faith in asserting them nonetheless. Their purpose was to needlessly multiply the proceedings and continue the harassment. Again, this conduct must be deterred. Therefore, Plaintiffs request that the Court use its inherent authority and award sanctions to Plaintiffs in the amount of reasonable attorneys' fees and costs expended in litigating the meritless claims asserted by Jimmy and Jimmy's counsel in this matter.

### B. Sanctions Should be Awarded Pursuant to 28 USC § 1927.

Sanctions are also warranted by the provisions of 28 USC § 1927. 28 USC § 1927 provides for an award of costs and fees where an attorney has "multiplie[d] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The purpose of § 1927 sanctions are to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Accordingly,

> when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney. Bad faith is not required to support a sanction under § 1927.

*Wilson–Simmons v. Lake County Sherriff's Department*, 207 F.3d 818, 824 (6th Cir. 2000) (emphasis omitted) (*citing In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). More

recently, the Sixth Circuit has stated that sanctions are appropriate under § 1927 when an attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios*, 465 F.3d at 646.

"Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period, nor is the motion untimely if made after the final judgment in a case." *See Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. Ohio 1997) ("Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period, nor is the motion untimely if made after the final judgment in a case.*"); see also Teamsters Local Union No. 473 v. Beacon Journal Publ'g Co*., 2008 U.S. Dist. LEXIS 78758 (N.D. Ohio Aug. 6, 2008) ("Unlike Rule 11 sanctions, parties claiming sanctions under 28 U.S.C. §1927 need not comply with a 'safe harbor' provision nor is the motion untimely if made after the conclusion of a case.").

In this case, 28 USC § 1927 certainly applies as Jimmy's counsel has continued to file meritless claim after meritless claim with no regard for past rulings or contradictory evidence.  As counsel demonstrated with the filing of the original partnership claim, even the existence of Jimmy's prior contradictory sworn testimony is no bar to a potential claim.  Counsel was aware that Jimmy had previously testified on numerous occasions that he was not a partner of Larry's.  Nevertheless, counsel filed a frivolous partnership claim, and "came in here and ask[ed] [the Court] to find that his client committed perjury in another case."

As explained above, this pattern of vexatious conduct continued.  After rejecting under oath any suggestion that he was an employee of Larry's, Jimmy and counsel

brought a counterclaim before the Court seeking a determination that he was an employee for life and sought to re-litigate the partnership and trademark issues that had already been decided. This was after the Court has already warned Jimmy about attempting to raise such "spillover" again. Finally, Jimmy further asserted a trust claim that he admitted could not stand.

Counsel has vexatiously multiplied this proceeding, wasted this Court's time, and cost Larry hundreds of thousands of dollars in unnecessary legal fees. Counsel must be held to account for this abuse of the judicial system.

### C. Sanctions Should be Awarded Pursuant to Rule 11.

Finally, Plaintiffs should be awarded their reasonable attorneys' fees and expenses incurred in responding to Defendants' frivolous Second Amended Counterclaim pursuant to Rule 11. Rule 11 states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

"Rule 11 sanctions are proper where, instead of withdrawing a complaint or agreeing to dismissal, a plaintiff continued to litigate after it became clear that his claim was frivolous, unreasonable or without foundation." *Dearborn Street Bldg. Assoc., LLC v. Huntington Nat. Bank*, 411 Fed. Appx. 847, 851 (6th Cir. 2011) (internal quotation marks omitted). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11 (c)(1).

"A determination whether an attorney has violated Rule 11 is made by an objective assessment of the reasonableness of the attorney's conduct under the circumstances." *Runfola & Assocs., Inc. v. Spectrum reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir. 1996). Additionally, the reasonableness requirement of Rule 11 is a "continuing responsibility to review and reevaluate [the] pleadings and where appropriate modify them to conform to Rule 11." *Id.* at 374 (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335-36 (6th Cir. 1998)). "A good faith belief in the merits of a case is insufficient to avoid sanctions." *See Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2002).

"The primary goal of Rule 11 is to deter baseless filings, and the secondary goal is to compensate the requesting party for expenses needlessly incurred in baseless litigation." *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *Merritt v. International Association of Machinists and Aerospace Workers*, 613 F.3d 609. 626 (6th Cir. 2010). The Sixth Circuit has reaffirmed that

monetary sanctions play an important role in Rule 11 deterrence and should be sufficiently severe to deter not only future misconduct by the offending attorneys, but also misconduct by other attorneys who might come before the Court. *See Rentz v. Dynasty Apparel Industries, Inc.*, 556 F.3d 389, 401-02 (6th Cir. 2009) (rejecting token sanctions and awarding "sanctions in the amount of the reasonable attorney fees incurred by the defendants due to the sanctionable conduct.")

Just months prior to Defendants filing the Amended Counterclaim, the Southern District of Ohio handed down Rule 11 sanctions where "Plaintiffs' counsel took objectively unreasonable positions with respect to both the facts and the law and persisted in maintaining the … claims despite the absence of legal and factual support for the claims." *Baker v. Chevron USA, Inc.*, S.D. Ohio Case. No. 1:05-cv-227 (a copy is attached to Plaintiffs' original Motion for Sanctions, Doc. #219, as Exhibit A). The court there noted that "[i]t is disheartening to read counsel's memorandum in opposition to Chevron's motion for sanctions because it is as if the past six years of litigation has never occurred." *Id.*

In this case, Plaintiffs were equally disheartened to read Jimmy's Counterclaim because it was as if two and a half years of litigation never occurred. As this Court itself recognized in its January 2, 2013 Opinion, Defendants' Counterclaim completely ignored this Court's previous decisions and has no basis in fact or law.   For example, Jimmy asserted a claim for breach of fiduciary duty. (Count 3 of Counterclaim).  But as this Court explained, "[t]his Court has previously rejected Jimmy's claim that he and Larry were partners; thus, no fiduciary relationship exists on that basis." (January 2, 2013 Memorandum Opinion and Order at 11).  Jimmy was aware that this Court had already determined that Larry never owed Jimmy any fiduciary duty and Jimmy had no

16

good faith basis to assert this claim where it was necessarily barred by the Court's previous decision.

Jimmy's Amended Counterclaim also asserted claims for unjust enrichment and fraud. But, again, the factual basis for each of these claims had already been disproved and dismissed by this Court. The Court had already determined that Jimmy was not Larry's partner, and his various asset transfers were not "capital contributions." Jimmy was merely an at-will employee who paid for the right to use intellectual property. Jimmy's attempt to re-characterize his asset transfers, such as the payment of licensing fees, was expressly barred by the Court's Partnership and Trademark Decisions. Jimmy's continuing arguments in this regard were particularly unreasonable given this Court's previous ruling in the Trademark Decision that "Jimmy's continued focus on the long history and equities of dealings between him and Larry are spillover from his arguments about the existence of a partnership, which the Court previously rejected in the partnership decision." (Trademark Decision, p. 21).

Jimmy's other two claims, wrongful termination and breach of oral contract to make a trust provision, were frivolous for an altogether different reason. As this Court recognized in its January 2, 2013 Opinion, Jimmy's employment theories were directly contradictory to his previously-asserted partnership claim. *See* January 2, 2013 Memorandum Opinion and Order at 5-6) ("At the partnership trial … [Jimmy] also expressly rejected the proposition that he was an 'employee.'"). After spending over a year seeking to prove that he was Larry's partner, not merely an employee, and testifying at length about his alleged partnership understandings with Larry, Jimmy never once stated that he had an agreement for lifetime employment. In fact, Jimmy scoffed at Larry's characterization of him as an employee. (*See* Trial Transcript, Day 3,

p. 78).  This clearly demonstrates a pattern of total disregard for testimony given "under oath" and a pattern of bizarre requests to the Court to completely disregard prior pleadings and testimony.[3]

Jimmy's trust claim was even more peculiar.  This claim, worth potentially millions of dollars, was never pled before the Counterclaim.  And it cannot be suggested that Jimmy is litigation-averse.  Jimmy pled countless other claims in at least six different pleadings against Larry before he suddenly "realized" he had a trust claim. Interestingly, Jimmy neglected to plead a trust claim even after he admitted he had knowledge of it.  Jimmy's failure to plead a trust claim until the eleventh hour confirms that it was wholly frivolous, and invented purely to keep litigation alive.

More prosaically, Jimmy admitted that his trust claim was not ripe.  In his Memorandum In Opposition to Plaintiffs' Motion to Dismiss, Jimmy flatly stated "the trust claim does not accrue under California law until Larry's death."  (Opposition, p. 75).  And the Court agreed, stating in its Opinion that "no breach occurs until his death." (January 2, 2013 Memorandum Opinion and Order at 13.)   Thus, Jimmy admitted on the record that his trust claim cannot go forward, yet he continued to pursue it.

The conduct exhibited in this matter by Jimmy and his counsel is egregious.  This is not simply a situation where a party continues to pursue a claim despite the lack of evidence supporting it, or unfavorable information revealed in discovery (although, to be sure, both are true).  Here, Jimmy continued to assert in his Second Amended Counterclaim baseless claims that had already been disproved and decided by this Court.  The parties conducted over a year of wide-ranging discovery, a week-long bench

---

[3] Jimmy also asked the Court to disregard his own written acknowledgements, on three separate occasions, that he was a mere at-will employee who could be fired for any reason.

trial, and extensive summary judgment briefing.  Jimmy had his chance, and knew that the facts were not going to get any better.

Quite simply, Jimmy's Counterclaim was not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and his factual contentions had no "evidentiary support" as this Court concluded over and over again in its January 2, 2013 Opinion, and which was affirmed by the Sixth Circuit.   Given the dearth of support for Defendants' claims (and indeed the affirmative evidence and rulings that contradicted them), it is apparent that the Counterclaim was only pursued in order to "harass, cause unnecessary delay, or needlessly increase the cost of litigation."

Rule 11 sanctions against Defendants and Defendants' counsel are warranted because the Second Amended Counterclaim was frivolous and objectively unreasonable. As Jimmy demonstrated at the partnership trial, he will say anything to keep litigation alive with his brother.  Apparently neither Jimmy nor his counsel feel restricted by the limits of Rule 11 and they must be reminded that the Court's latitude is not unbounded.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court sanction Jimmy and Jimmy's Counsel pursuant to its inherent power and 28 USC § 1927.   Jimmy and Jimmy's Counsel knowingly asserted meritless claims throughout this matter for an improper purpose, vexatiously multiplied proceedings, wasted this Court's time and resources, and cost Larry hundreds of thousands of dollars in unnecessary legal fees.  Jimmy and Jimmy's Counsel must be held to account for this abuse of the judicial system.

Further, Jimmy's Amended Counterclaim was frivolous and a desperate effort in Jimmy's cynical war of attrition against Larry.  As has been demonstrated, Jimmy and

his counsel will continue this course of conduct unless they are punished.  Therefore, Plaintiffs respectfully request that the Court sanction Jimmy and his counsel, and, pursuant to Rule 11, award Plaintiffs' their reasonable attorneys' fees expended in responding to Defendants' frivolous Second Amended Counterclaim.  Plaintiffs' initial Rule 11 Motion for Sanctions, filed April 26, 2012, was previously served on opposing counsel in accordance with Rule 11.  Counsel did not withdraw the Counterclaim or take any remedial efforts within 21 days of its service.

Respectfully submitted,

/s/ Mark A. Vander Laan
Mark A. Vander Laan (0013297)
E-Mail: mark.vanderlaan@dinsmore.com
Amanda P. Lenhart (0072517)
E-Mail: amanda.lenhart@dinsmore.com
Joshua A. Lorentz (0074136)
E-Mail:  joshua.lorentz@dinsmore.com
Robert M. Zimmerman (0079584)
Email:  robert.zimmerman@dinsmore.com
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio  45202
Phone:        (513) 977-8200
Fax:            (513) 977-8141

**Attorneys for Plaintiffs L.F.P., Inc.,**
**LFP IP, LLC, and Larry C. Flynt**
**and Counterclaim Defendants**
**Flynt Management Group, LLC,**
**HH-Entertainment, Inc. and**
**The Larry Flynt Revocable Trust**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been duly served upon the following via the Court's CM/ECF filing system this 6th day of November, 2013:

Robert W. Hojnoski
Shea Conley
Carrie M. Starts
REMINGER CO., LPA
525 Vine Street, Suite 1700
Cincinnati, Ohio  45202
Email:  rhojnoski@reminger.com
       sconley@reminger.com
       cstarts@reminger.com

**Attorneys for Defendants
Hustler Cincinnati, Inc.
and Jimmy R. Flynt**

/s/ Mark A. Vander Laan

2537646v2